# SUPERIOR COURT
## OF THE
## STATE OF DELAWARE

PAUL R. WALLACE
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Date Submitted: February 10, 2023
Date Decided: February 16, 2023

Travis S. Hunter, Esquire
Nathalie A. Freeman, Esquire
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801

Anthony M. Saccullo, Esquire
Thomas H. Kovach, Esquire
A.M. SACCULLO LEGAL, LLC
27 Crimson King Drive
Bear, Delaware 19701

RE: *Wen Fei Shen v. Herman Li and Herbert Li*
   C.A. No. N22C-10-274 PRW
   Defendants' Motion to Dismiss Plaintiff's Complaint

Dear Counsel:

This Letter Order resolves Defendants Herman Li and Hebert Li's Motion to

Dismiss Plaintiff Wen Fei Shin's Complaint.

## I.  BACKGROUND

Ms. Shen entered into an investment agreement (the "Investment

Agreement") with C&L Hartford, LLC, a Delaware LLC.[1]  Through that Investment

Agreement, Ms. Shen purchased equity in C&L Hartford in three installments.[2]  At

the end of the Investment Agreement's life—which was five years from the date a

---

[1]  Compl., Ex. A ("Investment Agreement") at 1, Oct. 10, 2022 (D.I. 1).

[2]  *Id.* § 5.

certain immigration petition was approved by the United States Citizenship and Immigration Services—the Company was obligated to repurchase Ms. Shen's shares.[3]

Upon entering into the Investment Agreement, Ms. Shen also executed two guaranty agreements.[4] The first was between Ms. Shen and five individuals: Defendant Herman Li, Defendant Herbert Li, and three non-parties (the "Personal Guaranty").[5] The second was between Ms. Shen and two LLCs: C&L Diners, LLC, and Pacific Restaurant, LLC (the "LLC Guaranty").[6] Those guaranties were entered into to ensure Ms. Shen would receive the money owed to her as part of the Investment Agreement's share repurchase obligation.[7]

On February 24, 2019, the Investment Agreement terminated and 14 days later C&L Hartford was required to repurchase Ms. Shen's shares.[8] C&L Hartford didn't.[9] And so Ms. Shen brought an action in California against C&L Diners, LLC,

---

[3] *Id.* § 6.

[4] Compl. ¶ 3; *id.*, Ex. B ("Personal Guaranty"), *id.*, Ex. C ("LLC Guaranty").

[5] Personal Guaranty at 3.

[6] LLC Guaranty at 3.

[7] Compl. ¶ 3; Personal Guaranty at 3; LLC Guaranty at 3.

[8] Compl. ¶ 2.

[9] *Id.* ¶ 5.

and Pacific Restaurant, LLC, under the LLC Guaranty.[10] The California court found in Ms. Shen's favor, but she was unable to recover due to the two LLCs bankruptcy filing.

On October 10, 2022, Ms. Shen filed suit in this Court against two individual investors—Herman Li and Herbert Li—seeking to recover the money owed to her from the share repurchase obligation via the Personal Guaranty.[11]

## II. APPLICABLE LEGAL STANDARDS

"Under Superior Court Civil Rule 12(b)(6), the legal issue to be decided is, whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[12] Under that Rule, the Court will

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) not dismiss the claims unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[13]

---

[10] *Id.*, Ex. D.

[11] Compl. at 9.

[12] *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. Ct. 2018) (quoting Super. Ct. Civ. R. 12(b)(6)).

[13] *Id.* (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).

"If any reasonable conception can be formulated to allow Plaintiff['s] recovery, the motion must be denied."[14]

The Court must accept as true all well-pleaded allegations for Rule 12(b)(6) purposes.[15] And every reasonable factual inference will be drawn in the non-moving party's favor.[16] If the claimant may recover under that standard, then the Court must deny the motion to dismiss.[17] This is because "[d]ismissal is warranted [only] where the plaintiff has failed to plead facts supporting an element of the claim, or that under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[18]

## III.  PARTIES' CONTENTIONS

### A. DEFENDANTS' CONTENTIONS

Defendants have moved to dismiss Ms. Shen's complaint asserting it is barred by the three-year statute of limitations for breaches of contract.[19] Specifically, the Investment Agreement ended on February 24, 2019, and the share repurchase was

---

[14]  *Id.* (citing *Cent. Mortg. Co.*, 27 A.3d at 535).

[15]  *Anderson v. Tingle*, 2011 WL 3654531, at *2 (Del. Super. Ct. Aug. 15, 2011).

[16]  *Wilm. Sav. Fund Soc'y, F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super. Ct. Mar. 9, 2009) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005)).

[17]  *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[18]  *Hedenberg v. Raber*, 2004 WL 2191164, at *1 (Del. Super. Ct. Aug. 20, 2004).

[19]  Mot. to Dismiss ¶ 2, Dec. 15, 2022 (D.I. 7).

due 14 days later on March 10, 2019.[20]  So Ms. Shen had until, at the latest, March 10, 2022, to bring her claims.[21]  Ms. Shen failed to file her complaint until October 10, 2022, so, the Defendants say, the Complaint is time-barred and should be dismissed.[22]

### B. MS. SHEN'S CONTENTIONS

Ms. Shen insists her Complaint is timely filed.[23]  First, Ms. Shen posits that the Personal Guaranty between her and the five individual investors is a promissory note governed by 10 *Del. C.* § 8109.[24]  Next, Ms. Shen says the Personal Guaranty is also an "acknowledgment under the hand of the party of a subsisting demand" and governed by 10 *Del. C.* § 8109.[25]  Last, Ms. Shen argues, that were the Court were to find it is 10 *Del. C.* § 8106 that applies, then the Personal Guaranty and Investment Agreement extended the statute of limitations as provided by § 8106(c).[26]

---

[20]  *Id.* ¶¶ 20-21.

[21]  *Id.*

[22]  *Id.* ¶ 23.

[23]  Response at 3, Jan. 13, 2023 (D.I. 10).

[24]  *Id.* at 4-5.

[25]  *Id.* at 5-8.

[26]  *Id.* at 8-10.

## IV. DISCUSSION

### A. TEN *DEL. C.* § 8109 DOES NOT APPLY.

Ten *Del. C.* § 8109 provides that:

> When a cause of action arises from a promissory note, bill of exchange, or an acknowledgment under the hand of the party of a subsisting demand, the action may be commenced at any time within 6 years from the accruing of such cause of action.[27]

In Ms. Shen's eyes, the Personal Guaranty is either a promissory note or an acknowledgement under the hand of the party of a subsisting demand.[28] It is neither.

### 1. The Personal Guaranty is Not a Promissory Note.

The Personal Guaranty is not a promissory note. "A promissory note is a form of negotiable instrument defined as 'a written promise by one person to pay another person, absolutely and unconditionally, a sum certain at a specified time.'"[29] The definition of a promissory note under Delaware law "is fundamentally identical to the definition of a 'negotiable instrument' under the Delaware Uniform Commercial Code."[30] Thus to be a promissory note, the "instrument must (1) be signed and in

---

[27] DEL. CODE ANN. tit. 10, § 8109 (2022).

[28] Response at 4-8.

[29] *Weinstein v. Luxeyard, Inc.*, 2022 WL 130973, at *5 (Del. Super. Ct. Jan. 14, 2022) (quoting *Saunders v. Stella*, 1989 WL 89518, at *2 (Del. Super. Ct. June 29, 1989)); *see also Fineberg v. Credit Int'l Bancshares, Ltd.*, 857 F.Supp. 338, 351 (D. Del. 1994).

[30] *Weinstein*, 2022 WL 130973, at *5 (citing 6 *Del. C.* § 3-104(a)).

writing; (2) contain an unconditional promise to pay a fixed amount in money; (3) be payable to bearer or [to] order on demand or at a definite time; and (4) contain no other undertaking or instruction to do any act in addition to the payment of money."[31]

For a promise to be unconditional under the Delaware Uniform Commercial Code, it cannot contain: "(1) an express condition to payment; (2) that the promise is subject to or governed by another writing; or (3) that rights or obligations with respect to the promise are stated in another writing."[32]

Here, the promise is not unconditional. The Personal Guaranty's terms, including the share repurchase obligation, are governed by the Investment Agreement.[33] And the Personal Guaranty does not apply unless the Company breaches its share repurchase obligation, the terms of which are found in the Investment Agreement.[34]

---

[31]  *Id.* (citing 6 *Del. C.* § 3-104(a) (1-3) and 6 *Del. C.* § 3-104 cmt. 1).

[32]  *Id.* (citing 6 *Del. C.* § 3-106(a)).

[33]  Personal Guaranty ¶ 1 ("Guarantors hereby unconditionally and irrevocably guarantee the prompt payment by the Company of the *Share Repurchase Obligation in accordance with the terms of the Investment Agreement*." (emphasis added)); *see also id.* ¶ 2 ("It is specifically agreed and understood that the terms of the foregoing Investment Agreement may be altered, affected, modified or changed by agreement between Company and Beneficiary and that this Guaranty shall thereupon and thereafter guaranty the performance of the Shares Repurchase Obligation as so changed, modified, or altered.").

[34]  Investment Agreement § 6.2 ("Within a period of 14 days after the expiration of the Term, Company agrees to repurchase the Shares from Investor at the agreed price of US$450,000.00

### 2. The Personal Guaranty is Not an Acknowledgment Under the Hand of the Party of a Subsisting Demand.

As Judge Woolley wrote in his iconic treatise on Delaware civil actions and procedure, an acknowledgment under the hand of the party of a subsisting demand, is an acknowledgment that "must be . . . in writing, under the hand of the party, of a subsisting demand, upon which the action is founded and must in itself establish the plaintiff's claim or cause of action."[35] The archaic phrase "subsisting demand" means an "existing debt."[36]

Ms. Shen argues the Personal Guaranty fits into this description because it "recognizes and admits the existence of a prior claim by [her] for $450,000 due at the termination of the Investment Agreement."[37] And the "cause of action for breach

---

dollars ('Repurchase Price') and will pay the rest of balance amount US$300,000.00 to Investor. Investor agrees to sell the Shares to the Company at the Repurchase Price. This paragraph shall not apply if Company has returned Installment to Investor pursuant to Section 5.2a."); *id.* § 5.2(a) ("In the event USCIS rejects Investor's I-526 or I-829 application for reasons other than as set forth in Section 5.2b or the reasons for this come from the Company project aim problem, this Agreement shall terminate and Company shall return to Investor Installment One and Installment Three total amount of US$530,000.00 dollars within fifteen days of Company's receipt of the notice of rejection, provided, however, that Investor shall have relinquished all rights, title, and interest to any Shares that have been previously issued to Investor.").

[35] WOOLEY'S PRACTICE IN CIVIL ACTIONS § 518 (1906) ("[T]he acknowledgment must be one in writing, under the hand of the party, of a subsisting demand, upon which the action is founded and must in itself establish the plaintiff's claim or cause of action.").

[36] *Black's Executor's v. Reybold*, 3 Del. 528, 529-30 (Del. Super. Ct. 1842).

[37] Response at 7 (citing Personal Guaranty at 3).

of guaranty by Defendants is founded in, and established by, the Guaranty."[38]

The issue here is with Ms. Shen's characterization of the debt. While the termination of the Investment Agreement creates an obligation—which if not paid creates additional obligations via the guaranties—that initial obligation only arises because of the end of the Investment Agreement. While it is contemplated that a debt *will* arise upon the Investment Agreement's completion, the debt *did not* exist when the Investment Agreement and Personal Guaranty were entered into.

The Investment Agreement's own language recognizes that the share repurchase obligation does not constitute a pre-existing debt. The debt only exists if the Investment Agreement terminates under Section 6.2.[39] But if the Investment Agreement terminates under Section 6.3, C&L Hartford has no obligation to repurchase the shares.[40] So the Investment Agreement itself conditions the share repurchase obligation (*i.e.*, the debt) on the Investment Agreement being terminated

---

[38] *Id.* at 8.

[39] Investment Agreement § 6.2 ("Within a period of 14 days after the expiration of the Term, Company agrees to repurchase the Shares from Investor at the agreed price of US$450,000.00 dollars ('Repurchase Price') and will pay the rest of balance amount US$300,000.00 to Investor. Investor agrees to sell the Shares to the Company at the Repurchase Price. This paragraph shall not apply if Company has returned Installment to Investor pursuant to Section 5.2a.").

[40] Investment Agreement § 6.3 ("Company may terminate this Agreement and retain all payments received by the Company prior to termination if Investor does not timely make the installment payments set forth in Section 5.1.").

in a *specific* way.  Thus, it cannot constitute pre-existing debt.

Accordingly, the Personal Guaranty is not an acknowledgment under the hand

of the party of a subsisting demand.

Because 10 *Del. C.* § 8109 does not apply, the question remaining is whether

the Investment Agreement and Personal Guaranty extended the time in which

Ms. Shen could bring a claim via 10 *Del. C.* § 8106(c).

### B. THE INVESTMENT AGREEMENT AND PERSONAL GUARANTY DO NOT EXTEND THE TIME FOR MS. SHEN TO BRING A CLAIM.

Ms. Shen argues that Sections Three and Six of the Personal Guaranty, taken

together, extend the statute of limitations to either the "complete satisfaction of the

Share Repurchase Obligation" or indefinitely up to a statutory limit of 20 years.[41]

Ten *Del. C.* § 8106(c) allows parties to extend the three-year statute of

limitations, but such an extension must be specified.[42]

Neither party asserts the Personal Guaranty (or Investment Agreement)

explicitly extends the statute of limitations.  Ms. Shen argues the Personal Guaranty

---

[41] Response at 8-10.

[42] DEL. CODE ANN. tit. 10 § 8106(c) (2022) ("Notwithstanding anything to the contrary in this chapter (other than subsection (b) of this section) or in § 2-725 of Title 6, an action based on a written contract, agreement or undertaking involving at least $100,000 *may be brought within a period specified in such written contract*, agreement or undertaking provided it is brought prior to the expiration of 20 years from the accruing of the cause of such action." (emphasis added)).

*implies* that the parties agreed to extend the statute of limitations[43] and that such an implication is enough per *Bear Stearns Mortgage Funding Tr. 2006-SL1 v. EMC Mortgage LLC*.[44] But in *Bear Stearns*, the Court of Chancery found a representations and warranties provision[45] combined with an explicit accrual provision[46] "constituted 'a period of time defined by reference to the occurrence of some other event or action' that is a sufficient 'period specified' for purpose of

---

[43] Response at 8-10 ("Taken together, these sections operate to specify either (1) a period of time defined by reference to the occurrence of some other event or action—in this case the complete satisfaction of the Shares Repurchase Obligation such that no obligations remain outstanding; or (2) an indefinite period.").

[44] *Bear Stearns Mortg. Funding Tr. 2006-SL1 v. EMC Mortg. LLC*, 2015 WL 139731, at *14 (Del. Ch. Jan. 12, 2015) ("The Purchase Agreement contains provisions designed to modify the statute of limitations for purposes of claims for breaches of representations and warranties.").

[45] *Id.* at *15

> All representations, warranties and agreements contained in this Agreement, or contained in certificates of officers of [EMC] submitted pursuant hereto, shall remain operative and in full force and effect and shall survive delivery of the Mortgage Loans to [to the Trustee]. Subsequent to the delivery of the Mortgage Loans . . . each of [EMC's] representations and warranties contained herein with respect to the Mortgage Loans shall be deemed to relate to the Mortgage Loans actually delivered . . . and included in the Final Mortgage Loan Schedule and any Replacement Mortgage Loan . . ..

(alteration in original).

[46] *Id.*

> [a]ny cause of action against [EMC] or relating to or arising out of a breach by [EMC] of any representations and warranties made in this Section 7 shall accrue as to any Mortgage Loan upon (i) discovery of such breach by [EMC] or notice thereof by the party discovering such breach and (ii) failure by [EMC] to cure such breach, purchase such Mortgage Loan or substitute a qualifying Replacement Mortgage Loan pursuant to the terms hereof.

(alteration in original).

Section 8106(c)."[47]  Not so here.[48]

Ms. Shen falls back on the assertion that the phrase "shall remain valid" as used in the Personal Guaranty means that the parties agreed to extend the time in which Ms. Shen could bring a claim to 20 years.  But the validity (or lifespan) of the Personal Guaranty is separate and distinct from the stretch Ms. Shen has to bring a claim, should one be triggered.  Put another way, an obligation to pay might exist in perpetuity, but that does not mean the ability to bring a claim for a violation of that obligation likewise exists in perpetuity.  To find otherwise would be to ignore any recognizable statute of limitations regime.

## V.  CONCLUSION

The Personal Guaranty is neither a promissory note nor an acknowledgment under the hand of the party of a subsisting demand that might animate 10 *Del. C.* § 8109.

And as there was no specific extension therein, the Personal Guaranty is subject to § 8106's usual three-year statute of limitations.  Because the cause of action to collect under the Personal Guaranty arose on March 10, 2019, and because

---

[47]  *Id.* (quoting Synopsis to House Bill No. 363).

[48]  *Chertok v. Zillow, Inc.*, 2021 WL 4851816, at *12 (Del. Ch. Oct. 18, 2021) ("By contrast, the conditions precedent that the plaintiffs maintain Zillow imposed do not expressly accrue or defer the statute of limitations.").

Ms. Shen did not file her complaint invoking such until October 10, 2022, her

Personal Guaranty claim against the Messrs. Li is barred by that three-year statute

of limitations.

Defendants' Motion to Dismiss Ms. Shen's complaint is **GRANTED**.

**IT IS SO ORDERED.**

_____

Paul R. Wallace, Judge